UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Smith,

        Plaintiff,

v.

Geneva Properties LP,

        Defendant.

Case No. 0:16-cv-02735-JRT-KMM

**REPORT AND RECOMMENDATION**

Padraigin Browne, Esq., Browne Law LLC, 3749 Sunbury Alcove, Woodbury, MN 55125, counsel for plaintiff

Christopher W. Boline, Esq., and Joseph J. Dudley, Jr., Esq., Dudley and Smith, P.A., 101 East Fifth Street, Suite 2602, St. Paul, MN 55101, counsel for defendant

This matter is before the Court on Defendant Geneva Properties' Motion to Dismiss Plaintiff's Complaint [ECF No. 6]. For the reasons set forth below, the Court recommends that the motion be denied.

I. **Background**

The plaintiff, Scott Smith, alleges that he is disabled within the meaning of the Americans with Disabilities Act ("ADA") and that he requires the use of a wheelchair for mobility. [Compl., ECF No. 1-1.] On July 8, 2016, he drove his car to a shopping mall known as "Oakdale Square," which is owned by the defendant, Geneva Properties LP ("Geneva"). [*Id.* ¶ 11.] Mr. Smith asserts that the Oakdale Square

1

parking lot was not compliant with the ADA when he made that visit. [*Id.* ¶¶ 12, 27.] Specifically, he alleges that it lacked any wheelchair accessible parking spaces, adjacent wheelchair access aisles, and posted signage indicating such parking spaces were reserved. [*Id.* ¶ 27(a).] Because the parking lot included these "architectural barriers" [*id.* ¶ 14], Mr. Smith alleges that the mall is not accessible to him as it would be to an individual who does not require a wheelchair for mobility. [*Id.* ¶¶ 15, 31-32.]

Mr. Smith asks the Court to declare that Geneva's parking lot violated Title III of the ADA, 42 U.S.C. § 12181, *et seq.* [Compl. ¶¶ 33-41; *id.* at 12, Prayer for Relief.] He also asks the Court to require Geneva to make readily achievable alterations to the parking lot to remove the identified barriers to access.[1] [Compl. at 12-13, Prayer for Relief.]

Geneva has moved to dismiss Mr. Smith's lawsuit on grounds that there is no longer a live case or controversy and the Court therefore lacks subject matter jurisdiction. [ECF No. 6.] Geneva asserts that it has voluntarily remedied any ADA violation that may have existed at the time Mr. Smith visited Oakdale Square. Geneva argues that Mr. Smith visited the shopping mall at a time when the parking lot was in the middle of a repaving project. In June 2016, Geneva's property management agent formally contracted with Minnesota Roadways Company ("Minnesota Roadways") to

---

[1] Mr. Smith also alleges that Geneva's parking lot violates the Minnesota Human Rights Act ("MHRA") and that he is entitled to recover a civil penalty and damages under that state law. [Compl. ¶¶ 42-50; *id.* at 12-13, Prayer for Relief.]

complete the second phase of that parking lot improvement project, "which included repaving, restriping, and installation of handicap signage." [First Scarrella Decl. ¶ 3, ECF No. 9.] Mr. Smith visited the property about a month later on July 8, 2016, and encountered the alleged architectural barriers identified in his complaint, but the needed repairs were already underway. He served Geneva with the complaint on July 27, 2016. [Notice of Removal ¶ 2, ECF No. 1.]

Minnesota Roadways completed all striping and signage work on August 18, 2016, and Geneva asserts that the parking lot work "is compliant with the Americans with Disabilities Act, the ADA Accessibility Guidelines, and the Minnesota Human Rights Act." [First Scarrella Decl. ¶ 5.] Further, the four accessible spots located in the parking lot at issue are posted with accessibility signage, and those signs are at least 60 inches tall when measured from the ground to the bottom of the signs. [Second Scarrella Decl. ¶¶ 8, 4.] Geneva's property management agent took certain measurements relating to these parking spaces and found that they are each at least 96 inches wide and that the access aisles are at least 60 inches wide and extend the full length of the parking spaces they serve. [*Id.* ¶¶ 4-6.] The City of Oakdale building permit for the parking lot project has also been closed. [Boline Decl. ¶ 2, Ex. A.] As a result of these changes to the parking lot, Geneva argues that the case is moot.

Mr. Smith opposes the motion, arguing that Geneva has failed to meet its heavy burden to show that there is no longer any existing case or controversy between the parties.

## II. Rule 12(b)(1) Standard

Because Geneva's motion implicates the Court's subject-matter jurisdiction, it is properly analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "On a Rule 12(b)(1) motion—unlike a Rule 12(b)(6) motion—the Court may consider matters outside the pleadings without converting the motion into a summary-judgment proceeding."[2] *Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014) (citing *Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990)). Courts will consider affidavits, declarations, and other evidence outside the pleadings in ruling on a jurisdictional motion, but where discovery has not occurred, it will take the plaintiff's allegations as true if they are "uncontroverted by [a] very limited record." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "If the Court determines at any time it lacks jurisdiction—whether upon motion or on its own—it must dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[2] Relying on *Smith v. United States*, 674 F. Supp. 683, 684-85 (D. Minn. 1987), Mr. Smith argues that the Court should assume that jurisdiction exists and wait to decide the merits on a motion for summary judgment after full discovery because the jurisdictional facts placed in issue by Geneva's motion are intertwined with the merits of his claim. Another Court in this District has rejected a similar argument in a nearly identical case. *Disability Support All. et al. v. Geller Family Ltd. P'ship*, 160 F. Supp. 3d 1133, 1137 (D. Minn. 2016) (rejecting plaintiffs' argument that the motion to dismiss for lack of standing was "premature").

**III. Mootness**

The federal courts' jurisdiction is limited to cases and controversies. *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015). And "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Under the mootness doctrine, "[a] plaintiff must have standing throughout the life of a case, not just at the beginning, in order for it to constitute a justiciable 'case or controversy' under Article III." *Sawczyn*, 8 F. Supp. 3d at 1113 (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). If circumstances change after the suit begins so that the plaintiff no longer has anything to gain from the relief requested in the lawsuit, then the case becomes moot. *Id.*

Where, as here, a defendant asserts that a case has been rendered moot due to the defendant's own voluntary cessation of a challenged practice, the defendant must make a two-fold showing to satisfy its "heavy burden." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). First, the defendant must show that it has voluntarily ceased the offending conduct. *Id.* And second the defendant must show that it is "absolutely clear" the offending conduct "could not reasonably be expected to recur." *Id.*

 **A. Voluntary Cessation**

The first issue before the Court is whether Geneva has met its heavy burden to show that it voluntarily ceased its operation of a parking lot at Oakdale Square that

5

failed to include ADA compliant parking spaces. Although Geneva has shown that the parking lot at issue now contains four reserved and accessible parking spaces, each marked by signage indicating they are reserved, and each adjacent to an access aisle, the Court nevertheless concludes that Geneva has narrowly failed to meet this heavy burden. In reaching this conclusion, the Court makes the following proposed findings.

In June 2016, before Mr. Smith visited the Oakdale Square shopping mall, Geneva had contracted to refinish the shopping mall's parking lot. [First Scarrella Decl. ¶¶ 3-4 & Ex. A.] On July 8, 2016, after Geneva began work on the parking lot improvement project, Mr. Smith visited Oakdale Square's parking lot. [Compl. ¶ 11.] Mr. Smith initiated this lawsuit by serving Geneva with the complaint on July 27, 2016. [Notice of Removal ¶ 2.] Geneva removed the case to federal court on August 15, 2016, and its contractor finished the striping and signage work in the parking lot three days later. [First Scarrella Decl. ¶ 5.] The parking lot now includes four parking spaces, which are all marked by accessibility reserved signage, and which are all accompanied by an adjacent access aisle.[3] [First Scarrella Decl. ¶¶ 6-7 & Ex. B; Second Scarrella Decl. ¶ 4.] Each parking space is at least 96 inches wide. [Second Scarrella Decl. ¶ 5.] The "access aisles are at least 60 inches wide and 20 feet long,

---

[3] There appears to be no dispute in this case that the parking lot was required to include a minimum of 4 accessible parking spaces. 36 C.F.R., Part 1191, Appendix B, § 208.2.

which extends the full length of the parking spaces they serve." [*Id.* ¶ 6.] And "[t]he handicap accessible parking space identification sign is at least 60 inches above the ground measured to the bottom of the sign." [*Id.* ¶ 8.]

This evidence demonstrates that Geneva voluntarily removed all of the specific barriers identified by Mr. Smith in his complaint, and began the work to do so prior to and independent of his lawsuit. But it does not "conclusively show that [Geneva's parking lot is] ADA compliant" in one respect. *Sawczn*, 8 F. Supp 3d at 1114. In particular, the evidence currently in the record is insufficient for the Court to determine that Geneva's parking lot complies with the Department of Justice guidelines that implement Title III of the ADA, including the 2010 Standards for Accessible Design ("2010 Standards").[4] Under the applicable regulations, in a parking lot of the size at issue here, at least one of the four accessible parking spaces must be a "van parking space." 36 C.F.R., Part 1191, Appendix B § 208.2.4 ("For every six or fraction of six parking spaces required by 208.2 to comply with 502, at least one shall be a van parking space complying with 502."). Although car parking spaces may be 96 inches wide, which is consistent with Geneva's evidence, van parking spaces must be at least 132 inches wide. However, an exception provides that a 96-inch-wide parking space is compliant if it is adjoined by a 96-inch-wide access aisle. 36 C.F.R.,

---

[4]  Dep't of Justice, 2010 ADA Standards for Accessible Design, 36 C.F.R., Part 1191, Appendix B and D; *see also* 2010 Standards, https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm.

Part 1191, Appendix D § 502.2. And a van parking space must contain a sign bearing the designation that it is "van accessible." *Id.*, Appendix D § 502.6. Such provisions of the 2010 Standards "became fully effective on March 15, 2012 and are enforceable through civil actions by private plaintiffs[.]" *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 576 (S.D. Tex. 2014).

The Court has some concerns about whether the issue of the van accessible parking spots was even properly raised by Mr. Smith. In the recitation of alleged ADA violations in the complaint, Mr. Smith never mentions van accessibility, and indeed he makes clear that he drives a car with a roof rack for his wheelchair.[5] Moreover, Mr. Smith never raised any concerns about van parking spaces until the hearing on the motion to dismiss, failing to include any discussion of the issue or evidence relating to it in his written response to the motion.[6] Given the untimely manner in which plaintiff raised alleged non-compliance with van parking space regulations, Geneva had no opportunity to prepare an argument questioning whether such issues are properly before the Court.

---

[5] The fact that Mr. Smith does not allege that he drives a van or that he intends to return to the property in a van raises serious concerns about whether the absence of a specifically marked van spot caused him any injury in fact.

[6] Although plaintiff's counsel indicated that neither Mr. Smith nor counsel wished to risk a confrontation if they attempted to take measurements at the parking lot themselves, the issues raised at the hearing about van parking space width and signage would not have required any measurements or even a site visit to include in the written response.

Nevertheless, based on the record before it, the Court cannot be certain that Geneva's refinished parking lot complies with the 2010 Standards that impose van parking space requirements, standards which were cited in Mr. Smith's complaint. [*See* Compl. ¶ 27(a).] Geneva's evidence lacks sufficient detail that would allow the Court to conclude that the parking spaces and access aisles are, in fact, sufficiently wide to meet the requirements related to van parking spaces.[7] Nor is there evidence that the signs bear a van accessible designation. Thus, the Court cannot conclude that Geneva has voluntarily and completely remedied the allegedly offending conduct, and the Court recommends that the motion to dismiss be denied.[8]

The Court reaches this conclusion based only on the record before it. It is possible that a more complete, or perhaps more precise record, could have been produced that would show current compliance with van parking space accessibility guidelines. For example, Geneva presented evidence that the access aisles added to

---

[7] Geneva has not presented evidence that allows this Court to conclude that the closure of the building permit for the parking lot improvement project satisfies its burden of showing compliance with the ADA for mootness purposes.

[8] Both in his memorandum in response to the motion and through counsel at the hearing, Mr. Smith argued that if the Court concludes that Geneva failed to meet its burden to show that the case moot, the Court should also conclude that Mr. Smith is entitled to judgment as a matter of law. This Court is not inclined to convert this early jurisdictional motion into a summary-judgment motion. Mr. Smith has not explained how the evidence currently in the record, taken in the light most favorable to Geneva, shows that he is entitled to judgment as a matter of law, particularly given the unique reality that the project to repair the parking lot in this case was underway at the time of Mr. Smith's visit.

the parking lot are at least 60 inches wide. This does not foreclose the conclusion that they are at least 96 inches wide, and indeed in the photographic evidence provided, the access aisles appear to be as wide as the spaces themselves. If they are, then Geneva may be able to show its parking lot is already compliant with the van parking space regulations governing width.

In addition, although the Court cannot conclude on the record before it that Geneva has shown its parking spaces include a "van accessible" designated sign,[9] Mr. Smith has not presented any evidence to the contrary. He offered only the assertion of counsel that no sign existed when she visited the parking lot the day before the hearing. If no sign existed at the time of the hearing, and Geneva were to replace one of its existing signs with a "van accessible" sign, such a change may then make it possible for Geneva to show that the case is moot. Given the absence of any other allegations of non-compliance with the ADA or the 2010 Standards, if the signage issue is all that is left to be addressed, it may be in the parties' best interest to negotiate a resolution to this litigation rather than continue to litigate over a very narrow set of issues.[10]

---

[9] The photographic evidence provided by Geneva shows that each parking space has a sign, but none of the photographs show that any such sign bears the "van accessible" designation. [First Scarrella Decl., Ex. B.]

[10] If no such resolution can be reached and the District Court agrees with this report and recommendation, given the very narrow scope of the alleged violations in
(Footnote continued on following page)

### B.     Offending Conduct Not Reasonably Expected to Recur

Because the Court concludes that Geneva has not met its heavy burden to show that it has voluntarily remedied the alleged ADA violations, the Court declines to reach the issue whether Geneva has shown that it is absolutely clear the offending conduct could not reasonably be expected to recur.  However, at the hearing Mr. Smith offered only speculation that Minnesota weather might require repainting of a parking lot's lines two to three years in the future and Geneva may choose not to comply with the ADA next time around.  Given that Geneva undertook the parking lot improvement project including ADA compliant features before it had notice of this litigation, it is a stretch to suggest that Geneva would reverse course in the future. Similarly, the Court declines to reach Mr. Smith's alternative argument that a Court cannot find that a Title III ADA claim is moot unless the defendant has admitted liability.

### IV.     The MHRA Claim

In support of its motion, Geneva also argued that because it started its parking lot improvement project before this lawsuit commenced and has now fixed the problems identified in the complaint, under Minn. Stat. § 336A.331, subd. 4(a)(1),

---

(Footnote continued from previous page)
the complaint, the parties should anticipate that this Court will limit discovery to an equally narrow degree.  *See Geller*, 160 F. Supp. 3d at 1138 (limiting the scope of Title III plaintiffs' claims to the ADA violations identified in the complaint and refusing to allow a site inspection designed to discover additional "barriers").

Mr. Smith's MHRA claim should be dismissed. If Mr. Smith's ADA claim were moot, this Court would recommend that the MHRA claim be dismissed for lack of supplemental jurisdiction. *Geller*, 160 F. Supp. 3d at 1139 ("Because the Court lacks subject-matter jurisdiction over their ADA claim, the Court cannot exercise supplemental jurisdiction over their state-law claims."). However, for the reasons explained above, this Court cannot conclude that it lacks subject-matter jurisdiction over the ADA claim based on Geneva's insufficient showing that the ADA claim is moot. Moreover, Minn. Stat. § 336A.331, subd. 4(a)(1) explicitly creates an affirmative defense to an MHRA claim. Determining whether Geneva is entitled to judgment in its favor based on an affirmative defense is more appropriately resolved at a later stage.

## V. Recommendation

Based on the foregoing, the Court recommends that Geneva's motion to dismiss for lack of jurisdiction [ECF No. 6] be **DENIED**.

Date: November 29, 2016

                                                                 *s/ Katherine Menendez*
                                                                 Katherine Menendez
                                                                 United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14

days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.